## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CAREY PORTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05 C 3654 |
| ) | |
| EDMOND B. ANDREWS; ARTURO ) | |
| VALLARINO; CITIBANK N.A.; ) | |
| CITIGROUP CORP.; ANGEL SEVERINO ) | |
| DIAZ; and REPUBLIC OF PANAMA, ) | |
| and E.B. CAPITAL CORP., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Carey Portman filed a *pro se* lawsuit against Citibank N.A., Citigroup Corp., and several other defendants. The Court granted summary judgment in favor of Citibank and Citigroup (collectively, "Citigroup") on Portman's claims against them. Citigroup seeks an award of costs under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, and it has moved for imposition of sanctions against Portman pursuant to Federal Rule of Civil Procedure 11 on the ground that his claims against Citigroup were unsupported by fact or law and/or were filed for an improper purpose. *See* Fed. R. Civ. P. 11(b)(1-3).

## Background

Portman made two sets of claims against Citigroup. The first set of claims was premised upon an alleged certificate of obligation issued by Citigroup in the amount of $4.698 billion, which Portman claimed was owned by the Republic of Panama, and which he claimed he had

been retained to try to redeem in return for a fee. Portman sued Citigroup for failing to pay on the certificate. Portman's second set of claims against Citigroup was premised upon an alleged Citigroup bank draft, issued to Portman himself, in the amount of $12.425 million.

On January 9, 2006, the Court dismissed Portman's claims regarding the supposed $4.698 billion certificate. The Court ruled, first, that Portman had failed to show that he had a right to sue on the certificate in his own behalf. The Court went on to state that it would have dismissed Portman's claims based on the certificate even had it concluded that he had the right to bring them. The Court stated that the certificate "is patently phony and thus does not provide a basis for Portman to sue the Citigroup defendants to collect on the certificate itself or on the commission he was supposedly promised." Order of Jan. 9, 2006 at 2-3 (docket no. 127). The basis for this statement was discussed in the Court's order and in an earlier order dated October 14, 2005 (docket no. 93).

On March 19, 2007, the Court granted summary judgment in favor of Citigroup on Portman's claims regarding the $12.425 million draft. The Court ruled that Citigroup had established the inauthenticity of the draft and that Portman had offered no admissible evidence indicating otherwise. *See* Order of Mar. 19, 2007 (docket no. 279).

In short, the Court has ruled that all of Portman's claims against Citigroup were deficient because they were premised upon phony documents. For the reasons the Court has discussed in its earlier orders, the documents were *patently* phony – in other words, no reasonable person could have believed they were genuine.

**Discussion**

**1.     Citigroup's request for costs**

Citigroup filed its initial request for costs on April 18, 2007, but the Court struck that request because it was filed without using the prescribed form and lacked the support called for on the form. *See* Order of Apr. 19, 2007 (docket no. 284). Citigroup refiled its request, using the proper form, on April 20, 2007. Portman objects that the request is untimely. The Court overrules Portman's objection. Local Rule 54.1(a) gives a prevailing party thirty days after entry of judgment to file its bill of costs. Though the Court entered summary judgment in Citigroup's favor on March 19, 2007, thirty-two days before Citigroup filed its amended request for costs, the entry of March 19, 2007 was not a "judgment" within the meaning of the Rules of Civil Procedure 54(a), because it was not an "order from which an appeal lies," Fed. R. Civ. P. 54(a), as it did not finally dispose of the case.

In its amended request for costs, Citigroup seeks $1,243.60 for court reporter fees, $1,375.00 for witness fees for the attendance of its expert witness at a deposition, $369.34 for photocopying charges, $1,250.00 for the services of its expert witness, and $144.55 for delivery charges. The delivery charges are not recoverable as costs because they are not among the taxable costs itemized in 28 U.S.C. § 1920. The same is true of the two charges sought by Citigroup for its expert. Unless the expert is court appointed, *see* 28 U.S.C. § 1920(6), the only fees that are recoverable as witness fees under § 1920(3) are those allowed by statute for a witness' attendance at court or a deposition. *See* 28 U.S.C. § 1821. This amounts to $40 per day, plus subsistence. With regard to the $1,375.00 charge, Citigroup lists all of it on its bill of costs under the heading "attendance"; it has not identified or documented any charges for the

witness' subsistence. Only $40.00 of the amount claimed is properly recoverable as costs; the remainder, and the entirety of the $1,250, are not recoverable.

The modest amount that Citigroup seeks for copying pleadings and other documents, $369.34, is adequately supported and recoverable. With regard to court reporter fees, Local Rule 54.1(b) provides that the maximum amount recoverable is the regular copy rate established by the Judicial Conference of the United States at the time the transcript was obtained. That amount is $3.30 per page. For this reason, the maximum amounts recoverable are $511.50 for the deposition of Bruce Meitzler, $250.80 for the deposition of Ellen Mulcrone Schuetzner, and $145.70 for the deposition of George Quiroga, a total of $908.00. The court reporters' extra charges for attendance at the Meitzler and Schuetzner depositions are not recoverable because they would make the amount exceed the Judicial Conference regular copy rate. *See, e.g.,* See, e.g., *Higbee v. Sentry Ins. Co.,* No. 97 C 1349, 2004 WL 1323633, at *2 (N.D. Ill. Jun. 11, 2004); *Rogers v. City of Chicago,* No. 00 C 2227, 2002 WL 423723, at *3 (N.D. Ill. Mar. 15, 2002). The court reporters' charges for delivery likewise are not recoverable. *Id.* at *1.

For these reasons, the Court taxes costs in favor of the Citigroup defendants and against plaintiff in the amount of $1,277.34 ($908 for court reporter fees and $369.34 for photocopying fees).

**2.     Citigroup's motion for sanctions**

Portman has moved to strike Citigroup's reply brief in support of its motion for sanctions on the ground that the brief was not timely filed. The Court grants Portman's motion. By order dated June 13, 2007, Citigroup's reply was to be filed by August 31, 2007. Citigroup did not file its reply until September 7, 2007, and it sought neither an extension of time nor leave to file a

late reply *instanter*. Because the Court has stricken the reply, the Court will not consider it and, in fact, has not read the reply.

A court may impose sanctions under Rule 11 if, among other things, a lawsuit is not well grounded in fact. The inquiry is an objective one: whether the party should have known that his position was groundless. *See, e.g., CUNA Mut. Ins. Co. v. Ofc. & Prof. Employees Int'l Union, Local 39,* 443 F.3d 556, 560 (7th Cir. 2006). Citigroup has met its burden of showing that Portman knew or should have known that his claims against Citigroup were groundless. The phoniness of both of the instruments on which Portman based his claims was readily apparent. Though Portman acted civilly in the courtroom while pursuing his claims, that does not undercut or excuse the fact – and it is a fact – that the claims were factually and legally frivolous, as any reasonable person in Portman's position would have realized. For this reason, Portman's claims against Citigroup violated Rule 11.

In his response to Citigroup's motion, Portman makes accusations regarding the business conduct of Citigroup. The alleged conduct that Portman cites has nothing to do with the authenticity of the particular documents on which Portman premised his claims against Citigroup, and it in no way excuses Portman's patent violation of Rule 11.

Portman also takes issue with the fact that Citigroup brought up in its motion matters he says are not directly related to his claims against them – including criminal charges asserted against Portman in other cases. The Court has not considered these matters in determining whether Portman's claims violated Rule 11 (though, as discussed below, the Court has considered one of Portman's earlier lawsuits in determining what sanction to impose). Citigroup has established the appropriateness of sanctions based on the patent frivolousness of Portman's

claims against Citigroup in this case, completely aside from any other misconduct Portman may or may not have committed.

For these reasons, the Court grants Citigroup's motion for sanctions [docket no. 241].

The Court must next determine the appropriate sanction. Citigroup appears to seek an award of any reasonable attorney's fees it expended in defending the case, *see* Mot. for Sanctions ¶ 12, and it requests an order prohibiting Portman from filing future actions absent a prior showing of a good faith basis to do so. Rule 11 permits the imposition of monetary and non-monetary sanctions. *See* Fed. R. Civ. P. 11(c)(2).

Citigroup is entitled to reasonable compensation for its legal fees and expenses in defending against Portman's frivolous claims. That said, the Court sees nothing to be gained by going through the lengthy and often cumbersome procedure provided under Local Rule 54.3 for establishing the amount of an award of attorney's fees. In this regard, the Court takes judicial notice of the fact that in the criminal case against him in this District, *United States v. Portman,* Case No. 04 CR 64, another judge of this court appointed counsel to represent Portman, which would have required a finding that Portman was financially unable to retain counsel. *See* 18 U.S.C. § 3006A(b). If Portman was financially unable to retain counsel in that case, it is almost certain that he is, at least at present, financially unable to pay any significant portion of the attorney's fees that Citigroup incurred in defending against Portman's claims. For this reason, to require the filing of a detailed fee petition and further litigation on that petition would do nothing more than needlessly impose additional costs upon Citigroup without a corresponding benefit.

Given the Court's knowledge of the nature and scope of the litigation of this case and of Chicago attorney hourly rates, and making reasonable assumptions regarding the amount of time

6

likely spent defending the case, the Court can state to a virtual certainty that Citigroup incurred attorney's fees and expenses exceeded $200,000, given the amount of time required for its attorneys to prepare and file the numerous motions and briefs required to deal with Portman's claims, the expenses of taking and defending depositions, the cost of obtaining an expert witness, and the time and effort required to respond to the virtual avalanche of motions that Portman filed. Rather than awarding that amount, however, in consideration of the collectibility factor noted in the previous paragraph, the Court imposes a monetary sanction against Portman in the amount of $100,000, payable to the Citigroup defendants (Citibank N.A. and Citigroup Corp.) within thirty days after entry of this order on the docket, as partial compensation for Citigroup's attorney's fees and expenses. If Citigroup reasonably believes this amount to be inadequate under all the circumstances, including the likelihood of collectibility, it is free to request reconsideration.

The Court also agrees with Citigroup that it is appropriate to impose a non-monetary sanction upon Portman that will have the effect of preventing him from pursuing other frivolous litigation against the Citigroup defendants in the future. Under Rule 11, a court may impose upon a vexatious litigant like Portman an injunction barring future court filings without prior approval. *See, e.g., Payman v. Lee County Comm. Hosp.,* No. 2:04CV00017, 2005 WL 735886, at *5-7 (W.D. Va. Mar. 31, 2005); *DePonceau v. Bush,* No. 04-CV-6240CJS, 2004 WL 1574621, at *3-4 (W.D.N.Y. June 4, 2004). Because Portman has had a chance to argue against the requested injunction in his memorandum responding to Citigroup's motion, any requirement for notice and an opportunity to be heard has been met.

The Court finds that the requirements for imposing a prefiling injunction, as discussed in

7

*Payman,* have been met in this case. In addition to the frivolous nature of the claims that Portman asserted against Citigroup in the present case, the Court takes judicial notice of the fact that the Seventh Circuit characterized as "preposterous" and "absurd" a prior suit that Portman filed, in which (as in the present case) he claimed to be the agent for someone who owned purported financial instruments with a value in the billions of dollars. See Marques *v. Federal Reserve Bank of Chicago,* 286 F.3d 1014, 1016 (7th Cir. 2004). Based on that case and the present one, it is reasonable to conclude that Portman is a vexatious litigant as to whom it is appropriate to impose limits on his ability to file further suits, at least against the Citigroup defendants.

Having given consideration to the requirement that an injunction be tailored to meet the circumstances that give rise to its issuance, the Court hereby enjoins Portman from filing, in any state or federal court or administrative agency, any lawsuit, claim, petition, or other action against Citibank, Citigroup, any entities affiliated with either of them, and any of their officers, directors, employees, agents, or attorneys, unless he has obtained prior permission from this Court to do so. To obtain such permission, Portman will be required to show, by appropriate and specific evidence, that any claims that he intends to pursue are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and that his allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## Conclusion

For the reasons stated above, the Court grants the motion for sanctions filed by

defendants Citibank N.A. and Citigroup Inc. [docket no. 241]. The Court also grants plaintiff's motion to strike defendants' reply brief [docket no. 300-3] but denies his motion for order to show cause and for sanctions [docket nos. 300-1 & 300-2], because the striking of the reply brief is a sufficient sanction. The Court directs plaintiff to pay the Citigroup defendants (Citibank N.A. and Citigroup Corp.) a monetary sanction of $100,000 within thirty days after entry of this order on the docket and also imposes an injunction against plaintiff as set forth above. The Clerk is directed to mail a copy of this order to plaintiff at the address reflected on the docket.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 17, 2007